## NEIFERT v. HASLEY.

PHYSICIANS AND SURGEONS—MALPRACTICE—EVIDENCE.

In an action against a surgeon for malpractice, evidence examined, and *held*, that there was none warranting the inference that plaintiff's disabled arm or crippled foot resulted from improper surgical treatment.[1]

Error to Wayne; Donovan, J.    Submitted June 4, 1907. (Docket No. 7.)    Decided July 13, 1907.

Case by Albert Neifert against Philip F. Hasley, a surgeon, for malpractice.    There was judgment for defendant on a verdict directed by the court, and plaintiff brings error.    Affirmed.

*James H. Pound* (*Charles H. Marr*, of counsel), for appellant.

*Charles M. Woodruff*, for appellee.

[1] As to degree of care and skill which a physician or surgeon must exercise, see note to *Whitesell* v. *Hill* (Iowa), 37 L. R. A. 830.

OSTRANDER, J.    Plaintiff, a man 30 years old, was
badly injured in May, 1903, by machinery.   According
to his testimony, his right arm was broken in three places
between the shoulder and elbow, some ribs were broken,
his leg was broken just below the knee, he was badly hurt
about the head, and a portion of his skull was gone.   De-
fendant, a physician and surgeon, attended him until
some time in the summer, and, as plaintiff claims, was
negligent and unskillful in his treatment.   The declara-
tion alleges, as improper treatment, permitting and caus-
ing the broken brones not to be placed in apposition the
one to the other, the muscles, ligaments, and tendons not
to be properly placed, so that they could properly adhere
to their proper places by natural processes, the leg and
foot caused to be and become greatly swollen, inflamed,
festered, and diseased, pus permitted to accumulate and
remain, so that it became and was necessary to amputate
a portion of the foot.   The result is alleged to be a weak,
stiff, deformed arm, a crippled leg and foot.   The case
coming on to be tried, the court, when plaintiff's case was
rested, directed a verdict for defendant.   This ruling and
direction is assigned as error.   We are therefore called
upon to review the testimony produced for plaintiff.

Counsel for appellant has directed attention to that por-
tion of it which, he thinks, made a case for the jury.   He
relies upon evidence of the fact that the arm was not set
until 19 days after the injury, the opinion of plaintiff
that there was no reason for not setting it earlier, the
statement of Dr. Reig that an arm should be set as soon
as possible, if everything is in condition to do it, mention-
ing as a preventable condition an arm too badly bruised,
the opinion of plaintiff that the arm "is not properly set."
He relies, also, upon the testimony of plaintiff, to the ef-
fect that Dr. Parker said to defendant, after learning that
the arm was not set:   "What do you expect to get out of
that?   You will have a flail arm out of it."   He relies,
also, upon the fact that Dr. Parker advised application of
heat to the leg; the argument made being that defend-

ant did not use a well-known remedy, and neglected to apply hot water to stimulate the circulation until told to do so by Dr. Parker. There is also the testimony concerning the amputation of the toes and of the condition of plaintiff at the time of the trial. The witnesses for plaintiff were himself, his wife, and Dr. J. H. Reig. It appears that on the day succeeding the injury, when plaintiff's leg was dressed and set, two physicians besides defendant were present. Later Dr. Parker was in consultation with defendant. When the toes were amputated, Dr. Stevens performed the operation, and Drs. Reig, Pike, and another physician were present. From Dr. Reig we get no testimony concerning the nature or extent of plaintiff's injuries, the treatment he had received, whether the treatment had been proper, the cause or causes of plaintiff's condition at the time he began treating him. His testimony warrants the conclusion that he found the tissue on and about the toes broken down and amputation of the toes necessary. In his opinion plaintiff had dry gangrene, which, he said, may be due to a bruise or to interference with circulation of the blood. Plaintiff's injuries were severe and evidently complicated. Defendant advised amputation of the leg. Dr. Parker, called in consultation, was of opinion that plaintiff had a fighting chance to save the leg. The chance was taken, with the result already stated. The argument that the court or a jury may assume that hot water applications to the leg were so strongly indicated that it was negligence not to apply them is met by the argument of counsel for defendant that hot applications were clearly contra indicated as likely to induce suppuration, and that the purpose of applying them when they were applied was to hasten the sloughing off of dead tissue and to establish a line of demarcation between good and bad tissue. There is no opinion evidence upon the subject. When defendant set the arm (it had been before that stretched out between sand bags), a hole was left in the plaster cast so that a sore might be reached and treated, indicating a

bruised arm.    It is not claimed that plaintiff has a flail arm.

If in any case nonexpert testimony of the injury, of the method of treatment adopted, and of the resulting conditions may be such evidence of negligent treatment by an attending surgeon as a jury may act upon (see *Wood* v. *Barker*, 49 Mich. 295; *Pelky* v. *Palmer*, 109 Mich. 561), this case is not such an one.    And we have found, and our attention has been directed to, no testimony warranting the inference that the disabled arm or the crippled foot resulted from improper surgical treatment.

The judgment is affirmed.

CARPENTER, GRANT, BLAIR, and MONTGOMERY, JJ., concurred.