Van Boskirk v. Pinto.

---

JOHN B. VAN BOSKIRK, APPELLEE, v. A. S. PINTO, APPELLANT.

FILED DECEMBER 23, 1915. No. 18330.

1. **Physicians and Surgeons: CARE AND SKILL: DIAGNOSIS.** A physician or surgeon, when he accepts employment to treat a patient professionally, must exercise such reasonable care and skill in that behalf as is usually possessed or exercised by physicians or surgeons in good standing, of the same system or school of practice, in the vicinity or locality of his practice, having due regard to the ad-

vanced state of medical or surgical science at the time, and he is not liable for a mistake in judgment made in diagnosing a physical injury where he used such ordinary and reasonable care and skill, even though his judgment may be erroneous.

2. ———: ———: ———: SUFFICIENCY OF EVIDENCE. Evidence examined, and *held*, not to establish that the failure of defendant to procure a Roentgen ray picture to be taken of the plaintiff's foot and ankle as an aid to diagnosis constituted lack of reasonable care and skill under all the surrounding circumstances.

3. ———: ACTION FOR MALPRACTICE: REASONABLE CARE: QUESTION FOR JURY. The question whether a physician and surgeon, after having reasonable grounds to believe that he had made a mistake in diagnosis and that a fracture existed in a case where the injury had been considered by him to be merely a sprain, exercised reasonable and proper care and skill after he had reached such conclusion, is a matter, under proper pleadings and instructions, for a jury to determine, and it is *held* that there was sufficient evidence on this point to go to the jury.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Reversed.*

*Mahoney & Kennedy* and *Philip E. Horan,* for appellant.

*Brown, Baxter & Van Dusen* and *M. L. Donovan,* contra.

LETTON, J.

This is an action against two physicians for malpractice. The case was afterwards dismissed as to Dr. Spaulding. The jury found for the plaintiff in the sum of $1,500, and, from a judgment on the verdict, defendant Pinto appeals.

The facts developed at the trial are that on the 4th of May, 1912, the plaintiff, who was a man 27 years of age employed by a tent and awning company, was putting up awnings on the Omaha post office building. The ladder slipped and he fell a distance of about 15 or 18 feet. Dr. Spaulding was called, who gave him a hypodermic injection to relieve the pain. He was taken to a hospital, placed upon an operating table, and Drs. Pinto and Spaulding made an extended examination of his ankle,

spending over half an hour in doing so. They diagnosed the injury as being a severe sprain. The ankle was placed in splints and the patient placed in charge of a nurse who was instructed to pour liniment upon it. Dr. Spaulding then gave the case over to Dr. Pinto. Three or four days after the injury the splints were removed, the foot placed on a pillow with a sandbag to support it, and the nurse was directed to massage the ankle and move it as much as the patient could stand. This was done each day. He remained under Dr. Pinto's care in the hospital 17 days. At the time he left he was unable to bear his weight upon the injured foot without pain or to walk without crutches, and finally the foot remained fixed in such a position that the front part of the foot was left at a 'downward angle from the normal position. On July 11 he suggested to Dr. Pinto he would like an X-ray taken. An X-ray picture was then taken by Dr. Tyler. It disclosed that the fall had caused a slight impacted fracture of the forward part of the astragalus and a rupture or raising of the periosteum on the posterior portion of this bone. A fluid exuded which afterwards hardened into a bony substance and formed a wedge between the articulation of the tibia and astragalus, thus causing the abnormal position of the foot.

Four physicians were called by the plaintiff. One of these physicians, Dr. Tyler, was an X-ray expert. He testified to having taken X-ray pictures of the plaintiff's foot on July 11 or 12, 1912, and on November 12, 1912, which disclosed practically the same conditions. The negative of the first picture was accidentally broken, but the pictures taken November 12 are in the record. Dr. Tyler testified that an X-ray picture taken at or about the time of the injury would not have disclosed the condition with reference to the periosteum or the effusion of the fluid; that the proper treatment for the impacted fracture would have been to keep the foot at rest by means of splints for six or eight weeks. He also testified that, if when Dr. Pinto examined Mr. Van Boskirk's ankle he

found swelling, mobility, no displacement, no dislocation, and no crepitation, his diagnosis in the first instance that his injury was a severe sprain would have been the diaognosis of an ordinary practioner of the allopathic school of medicine in Omaha about May, 1912. The other three witnesses called on behalf of plaintiff testified substantially to the same effect, though one or two said that if the patient would stand the expense he would, in case of doubt, or under such circumstances, have had an X-ray picture taken. None, however, testified that this was the usual method. It was also proved that an operation to remove the bony growth could be as well made now as at any previous time. It was shown that few doctors in Omaha own X-ray machines, but that X-ray pictures may be procured by paying for them. The testimony of Dr. Pinto and Dr. Spaulding is to the effect that at the time of their examination they used all the well-known tests for determining whether there was a fracture or not. They found mobility, no dislocation, no crepitation, and nothing else that would indicate that a fracture had occurred. The conclusion which must be drawn from the testimony is that it does not establish that the failure to have an X-ray picture taken as an aid to diagnosis at this time constituted lack of reasonable care and skill under all the surrounding circumstances, and that if plaintiff's case rested upon the claim of negligent diagnosis alone the evidence would not support a verdict in his favor. The testimony showed that the treatment which was given to the ankle, while proper if the injury had merely consisted of a sprain, was improper for an impacted fracture, that in such a case the splints should have remained for several weeks and until there was no danger of the foot being distorted. It is shown that, if splints had been applied and the ankle bandaged so that the foot was kept at right angles to the leg, the bony fluid would have exuded into the space between the tibia and the astragalus, but the foot would have been left in its normal position. The evidence of plaintiff and his wife is that he had less pain

when the foot was thus placed than when it was left in
the slanting position which it assumed. The medical testi-
mony is to the effect that this position was in all prob-
ability caused in the first place by the involuntary action
and superior strength of the muscles of the calf over those
of the front of the leg, but that later the position became
fixed by the exudation and hardening of the callous be-
tween the bones.

The only question in the case as to which there is room
for doubt is whether, after the diagnosis was made and
after sufficient time had elapsed to show that the injury
was in all probability more serious than a sprain, Dr.
Pinto failed to give reasonable and proper treatment.
The strongest evidence on this point was given by the
defendant himself. He testified that he had an idea on
the Saturday following the injury that there was a frac-
ture of the articular ends of the bones, and that from
the 11th of May he treated the case with the view that the
ankle was fractured; that on the Saturday following the
injury he suggested an X-ray, but that he did not mention
this to Mr. Scott, the plaintiff's employer, who had di-
rected him to take care of the plaintiff's case and to send
him the bill; that on the 17th of May, the day the plaintiff
was taken to his home, he told him he ought to have an
X-ray, but the plaintiff said he could not afford it. On
the other hand, plaintiff denies these statements, and
testifies that while in the hospital he suggested that the
X-ray should be used, but defendant said it was unneces-
sary, that there was no change in the treatment and on
July 11 defendant said that with manipulation and mas-
sage of the ankle the stiffness would wear away in time.
Two witnesses testify that while in the hospital the ankle
was swollen and the foot turned to one side, that the doc-
tor was informed that plaintiff complained that the foot
felt as if it was twisted, and that it kept him on a nervous
strain all the time, and that when Dr. Pinto dismissed
the case there was still discoloration and swelling of
the ankle. It seems to be established that, if the foot

could have been fixed in the natural position without severe pain while the patient was in the hospital, it would have been the correct and proper course of treatment for a fracture.

Counsel for defendant admits that the evidence disclosed that the treatment given was the proper treatment for a sprain, but not for the injury received, and asserts that the testimony with respect to what would have been proper treatment for a fracture was improperly admitted, since it was impossible to determine the real nature of the injury for weeks after it occurred. His brief "admits that, in order to absolve Dr. Pinto from all liability and from all negligence, it is necessary for us to go one step further and to consider the case in its development, not only from the point of view of the treatment actually accorded, but from the point of view of any symptoms that arose during the treatment that should have required Dr. Pinto to subsequently doubt the correctness of his original diagnosis." He insists in this connection that, if negligence did exist in this phase of the case, it was negligence for which a different rule of damages should have been laid down by the trial court, and he further complains of the manner in which the case was submitted to the jury, mainly for the reason that the charge included the element of negligence in the diagnosis, which there was no evidence to sustain. We are convinced that, if defendant was guilty of any negligence at all, it was in failing to change his manner of treatment after he had reason to believe that a fracture had occurred, and that the other question should not have been submitted.

The petition, after pleading negligent diagnosis, in substance alleges that defendant wrongfully advised plaintiff that his injuries were being properly treated and he would soon recover the use of his foot and ankle, and that, relying thereon, plaintiff was induced to allow defendant to continue to treat the injuries until about June 22, 1912, when plaintiff was discharged from further treatment, and that, if defendant had properly diagnosed the injury and

had properly treated the same, he would have wholly re-
covered in two or three months and would have had the
unimpaired use of his limb. It is with some hesitancy
that we have come to the conclusion that under these alle-
gations proof of negligent and unskilful treatment, after
Dr. Pinto had reason to believe a fracture had occurred,
may be made. There is sufficient evidence on this point
to go to the jury. We believe that the defendant's sub-
stantial rights were injuriously affected by the submission
to the jury of the question as to negligence in the original
examination and diagnosis. The judgment of the district
court is

REVERSED.

SEDGWICK and HAMER, JJ., not sitting.