Haskell EDWARDS and Skelly Oil Company,
a Corporation, Plaintiffs in Error,

v.

Charles Bryson CHANDLER, Defendant
In Error.

No. 37261.

Supreme Court of Oklahoma.

March 5, 1957.

**296**

Monnet, Hayes & Bullis, Oklahoma City, and C. D. Cund, Duncan, for plaintiffs in error.

Jones & Beauchamp, By: K. C. Beauchamp, Jr., Duncan, for defendant in error.

BLACKBIRD, Justice.

The present action for damages arose out of an automobile collision between one owned and being driven by defendant in error, hereinafter referred to as plaintiff, and another owned and being driven, respectively, by the plaintiffs in error, hereinafter referred to as defendants. Besides the damages to his automobile in the amount of $475, plaintiff sought recovery from defendants for certain injuries he sustained to his left arm. The latter he itemized in his amended petition as follows: (1) Loss of wages $1,500; (2) Diminished earning capacity $19,800; (3) Past medical bills $500; (4) Future medical bills $500; (5) Past mental and physical pain and suffering $300; and (6) Future mental and physical pain and suffering $880.

The jury returned a general verdict in plaintiff's favor for the sum of $13,859.42,

and judgment was entered accordingly. After the overruling of their separate motions for a new trial, defendants lodged the present appeal.

The question presented here may be broadly stated as: Whether or not the trial court erred in allowing the jury, in arriving at its verdict, to consider plaintiff's alleged damages on account of diminished earning capacity, and future pain and suffering. There is no question as to the other alleged items of plaintiff's damages, but, as pointed out by defendants, these total only $3,275, which, when subtracted from the total amount of the lump sum verdict, leaves a balance of $10,584.42, which the jury must have assessed as plaintiff's damages for either permanent physical impairment, or future pain and suffering, or both.

■ The record of the trial proceedings reveals that, at the close of the evidence, neither defendant interposed a special demurrer as to the disputed items, nor in any other customary way objected to the jury's undertaking to award plaintiff any sum whatsoever for plaintiff's diminished earning capacity and future pain and suffering. All defendants did was demur to the evidence on the ground that it failed to disclose facts sufficient to constitute "a" cause of action in plaintiff's favor and interposed general motions for directed verdicts, and two "motions to strike." The first of these latter motions requested the court to strike from the case and from consideration of the jury "the plaintiff's allegations of diminished earning capacity for which he contends amounted to $19,800.00, for the reason there is no competent proof tending to support such allegation." The last of these two motions moved "the court to strike from this case and consideration of the jury, plaintiff's allegations as to future *mental* pain and suffering for the reason there is no competent evidence tending to support such allegation and for the reason it is highly speculative." (Emphasis ours.) After these motions were overruled, the only thing defendants' attorneys did by way of objecting to the submission of the

cause to the jury as to plaintiff's future physical, (as distinguished from mental) pain and suffering, and as to plaintiff's diminished earning capacity *in any amount* (as distinguished from the $19,800, he alleged in his pleadings) was to except to the giving of the court's Instruction No. 13, in which the court told the jury that, in determining the amount of damages that would fairly and reasonably compensate plaintiff, up to and including the total of $44,480 he sought, they might consider whether his injuries are permanent, "or otherwise", and "his physical impairment if any * * *", and "the physical and mental pain and suffering endured and likely to be endured in the future, if any * * *". Since defendants did not move for judgment notwithstanding the verdict, as to the particular items in controversy, and do not urge that the trial court erred in overruling the motions for a new trial on the ground that the verdict and judgment were excessive, see Smith v. Welch, 10 Cir., 189 F.2d 832, 838, and the Oklahoma cases there cited, it will be seen from the above that defendants present no alleged error whose review entails a determination of whether or not (assuming that plaintiff's permanent physical impairment, and future pain and suffering, were proper items to be considered in assessing plaintiff's damages) the evidence was sufficient to support an assessment for these items of as much as $10,584.-42. On the basis of the record and defendant's argument, the only question for us to determine is whether or not the trial court erred in submitting to the jury, by its Instruction No. 13, the question of whether or not plaintiff would be entitled to damages *in any amount* on account of permanent physical impairment, and future pain and suffering. As the issue is thus restricted, if we find that these items of alleged damages should have been considered *at all* in the jury's assessment of plaintiff's damages, then defendants' appeal fails.

■ Their contention that plaintiff's future pain and suffering and diminished earning capacity should not have been submitted to the jury is based solely on the assertion that there was no testimony from medical experts as to these two items of alleged damages, and that plaintiff's injuries were "subjective" in character. If this is true, then defendants' position is supported by the rule enunciated by this court in Shawnee-Tecumseh Traction Co. v. Griggs, 50 Okl. 566, 151 P. 230, and followed and cited with approval in many subsequent cases, that: Where the injury is subjective, in order to warrant an assessment of damages for future pain and suffering, and permanent injury, or both, there must be evidence by expert witnesses that plaintiff, with reasonable certainty, will experience such pain and suffering and that the injury is permanent. See also Jones v. Sechtem, 131 Okl. 155, 268 P. 201, 203; Ft. Smith & W. R. Co. v. Moore, 66 Okl. 322, 169 P. 904; and St. Louis, I. M. & S. Ry. Co. v. Cantrell, 63 Okl. 187, 164 P. 110, L.R.A. 1917D, 980. The corollary, or other part of this rule, is that where the injury is "objective, and it is plainly apparent from the nature of the injury, that the injured person must of necessity undergo pain and suffering in the future, the jury may infer that fact from proof of such an injury alone." It thus becomes apparent that in order to determine the question involved here, it will be necessary to review the evidence concerning the nature of plaintiff's injury.

■ Plaintiff testified that, as a result of the collision, his left arm was broken at the elbow and that two bones of his forearm were broken and protruded through the flesh in two places. He also stated that he was suffering pain and bleeding when he was picked up and brought to the Lindley Hospital at Duncan. Dr. S, an orthopedic surgeon at the Oklahoma City Hospital to which plaintiff was taken from Duncan, the day after the accident, in August, 1953, described plaintiff's injuries in technical terms as follows: "He had a fracture of the comminuted type of the proximal end of the middle one-third of the left ulna, which is the bone on the inside of the arm at the elbow. This was a closed type of fracture, or simple fracture. There was a dis-

location of the head of the left radius, which is the bone on the outside of the joint * * * at the elbow." As to the treatment administered plaintiff, this specialist further testified by deposition taken in October, 1955, that: "The olecran and the ulna, which is the inside bone, were treated with an intermedullary nail or pin running down the shaft of the bone, and the head of the radius was reduced. He (plaintiff) was then placed in plastic splints and * * * a sling applied." Dr. S further deposed that the steel pin inserted in plaintiff's arm along the shaft of the bone was from 8 to 10 inches long and its purpose was to hold the bone fragments in place, or alignment. The doctor further stated that plaintiff was seen daily during the 9 days he was in the hospital, and was dismissed on August 28th. When asked whether or not steel pins of the kind he had related placing in plaintiff's arm are usually left there, Dr. S answered that they are usually left there until "union" has taken place, before being removed. The doctor's deposition concerning plaintiff's arm and the steel pin in it continued as follows:

"Q. Have you been able to determine whether or not union has taken place so that it (the pin) would be removed? A. I haven't seen him since January of 1954 so actually don't know whether union has taken place or not. At that time we felt—we made the statement that he was working and felt he would like to wait a while before coming in for new X-rays to determine whether or not the ulna, which was one of the bones fractured, should be operated.

"Q. Doctor, as long as this pin is in his arm, will that restrict his activities as to the use of the arm? A. The pin per se would not restrict his activities a great deal. There is a little prominence of the pin at the elbow and that of course, would have some nuisance value but it won't limit his activities much.

"Q. Let me ask you another question. Would he be completely temporarily disabled until this pin was taken out of his arm or would he be able to use his arm? A. He has gone back to work with it in apparently so I guess it would not disable him from work.

"Q. Now, when you come to permanent disability, Doctor, would you be able to estimate the amount of permanent disability that he should have to his arm? A. No; the reason being that I don't know whether he has union or not. He doesn't come back for additional examination and therefore I have no idea whether he has union. If he does not have union, then there would be quite a bit more than if the bone had healed."

As to whether plaintiff would have some disability in the arm if there was a union, or growing together, of its pieces and a healing of the bone, the doctor replied *in the affirmative*. In view of such testimony by a medical expert, we cannot say that, under the rule relied upon by defendants, the trial judge erred in authorizing the jury, by Instruction No. 13, to consider the permanency of plaintiff's injuries. The doctor's testimony appears to meet at least the minimum requirements of the rule, whether said injuries be considered "objective" or "subjective" thereunder, and, as to permanent physical disability and impairment, it corroborates plaintiff's testimony to the effect that (though he has worked at his regular occupation as a driller since the accident) he cannot lift anything with the arm and experiences "a lot of trouble" throwing in the clutch on the drilling machine. Plaintiff further testified that the arm that is now injured was the "main one" he used in his work and that, though he can use it, he still suffers pain in it and uses the foot brake, instead of the clutch "a lot of times." Plaintiff gave as the reason that he had not been back for future medical attention (as Dr. S disclosed) was that he "didn't have the money * * *".

■ Decision upon defendants' claim of error in allowing the jury to consider

plaintiff's future pain and suffering, in the assessment of his damages, necessitates, under the aforesaid rule they rely upon, a determination as to whether or not the injuries to plaintiff's arm were subjective, or objective, and such as to make it plainly apparent that plaintiff will necessarily experience such pain and suffering therefrom. We think from the evidence, the injury can only be deemed the latter. If, as a result of the accident, plaintiff had completely lost the arm, or a part of it, there would be no question but that such loss would constitute an objective injury; and it has been indicated that the fracture of an arm, or member, may come within the same category. See the dissenting opinion of Daly, J., in Horowitz v. Hamburg-American ·Packet Co., 18 Misc. 24, 41 N.Y.S. 54, discussed in the Annotation at 115 A.L.R. 1149, 1156. As shown by the cited Annotation, we held in Forrest E. Gilmore Co. v. Hurry, 165 Okl. 29, 24 P.2d 653, that the question of whether an injury is temporary or permanent is one of science to be determined by expert witnesses. But, in the present case, as we have demonstrated, no witness denied the statement of the only medical expert who testified that plaintiff would have permanent disability from the injuries to his arm. In this connection, the court in Jordan v. Cedar Rapids & M. C. R. Co., 124 Iowa 177, 99 N.W. 693, 695, said:

"The question of future pain is generally more or less speculative, because its existence or nonexistence is a matter very largely within the knowledge of the injured person alone; but where there is evidence of a permanent injury, and of present pain produced thereby, the jury may consider such facts, and conclude therefrom that future pain may be suffered, and we know of no case in this state holding a contrary view."

In the present case, when plaintiff appeared as a witness, he testified he still suffers pain in his arm, and this testimony was rendered altogether plausible by the corroborating testimony of other witnesses concerning the trouble he has had, and continues to have, with it in his work and daily activities. Dr. S himself cast doubt upon the complete efficacy, or success, of his treatment of the arm when he said that upon consideration of the fact that when plaintiff was examined four months thereafter, and it was found that the ulna of the arm "was not solidly united", this witness further stated: "Therefore I feel that after four months approximately without union, one is a little hesitant to call it a good result." The jurors had a good opportunity of seeing for themselves (objectively) what Dr. S described as the "prominence of the pin at the elbow" of plaintiff's arm, and of drawing certain conclusions concerning the likelihood of his suffering pain in moving his arm when the plaintiff appeared before them and made the demonstration indicated in the record as follows:

"Q. Mr. Chandler, would you roll up your sleeves on both of your arms please? Now stand up, please sir. Would you walk down here in front of the jury? Now, hold your arms out like this, both of your arms (indicating). Turn your palms over—down and pull your arms together. Now turn around and let your arm face the jury. Now would you take your right arm and close it and take your left arm and close it? Now let your left arm back in the position it 'was before. Now Mr. Chandler would you tell the jury where that piece of steel iron is in your arm? A. There is the end of it right there and it comes from there right up to right there (indicating left arm)."

As we see it, the only question which the record in this case fails to settle with abundant certainty is not whether plaintiff will experience future pain and suffering, but how much. As the latter is a question that not even medical experts could definitely settle, and is a matter to be determined by the jury in any case, we think the

**300**

record here is sufficient to meet the requirements of the rule defendants rely upon. The nature of plaintiff's injuries, together with the opportunity given the jury, on the basis of the evidence, and of plaintiff's graphic exhibition and demonstration to them, distinguishes this case from everyone defendants cite to support their position.

In accord with the foregoing, the judgment of the trial court is hereby affirmed.

WELCH, C. J., and DAVISON, WILLIAMS and JACKSON, JJ., concur.

HALLEY, JOHNSON and CARLILE, JJ., dissent.