**M. K. & O. AIRLINE TRANSIT COMPANY,**
a Corporation, Plaintiff in Error,

v.

**Edith René DECKARD, a Minor, by and through her father, Arlen R. Deckard, as next Friend, Defendant in Error.**

No. 40466.

Supreme Court of Oklahoma.

Dec. 22, 1964.

See also 397 P.2d 888.

Best, Sharp, Thomas & Glass, Joseph M. Best, Joseph A. Sharp, Tulsa, for plaintiff in error.

Floyd L. Walker, Tulsa, for defendant in error.

WILLIAMS, Justice.

Although their positions are here reversed, reference to the parties hereto is made as in the trial court.

Plaintiff, a seven year old girl, was injured November 15, 1961, while riding in a 1960 Model Volkswagen automobile driven by her father when a 1961 Cadillac automobile belonging to M. K. & O. Airline Transit Company, driven by its employee John A. Klobas, collided with it. She brought this action by her father and next friend and recovered a judgment on a jury verdict in the sum of $50,000.00.

To reverse such judgment the defendant urges two propositions: First, error of the trial court in submitting the cause to the jury, it being contended that defendant's negligence had not been sufficiently proven. And second, that the court erroneously allowed the medical testimony to extend to baseless conjecture concerning the permanence of plaintiff's disability rather than confining such testimony to reasonable certainty or probability, which resulted in the recovery by plaintiff of excessive damages.

Concerning the first proposition, defendant says the only evidence offered by plaintiff to establish negligence on the part of defendant was that the collision occurred on the plaintiff's side of the road, and that since defendant's evidence explained the presence there of its vehicle, without fault of the driver, the burden of going forward from the thusly created position of equipoise was not successfully carried by plaintiff, but was left in equipoise.

The jury was instructed that Klobas' driving to the left of the centerline of the roadway in violation of 47 O.S.1961, § 11–301 et seq. (which statutes with stated exceptions require a vehicle to be operated to the right of the center of the road) created a prima facie inference of negligence, that is, negligence per se. It is not contended that the instruction was other than a proper one. It is contended that the effect of the statute is to place upon a person operating a vehicle in the prohibited manner the burden of showing that the violation of the statutory direction is excusable under circumstances suddenly thrust upon him, as where a third vehicle parked upon the shoulder suddenly enters the traveled portion of the roadway directly ahead of defendant's automobile, the driver of which then reacts by suddenly applying his brakes with resulting effect that defendant's vehicle swerves across the centerline into plaintiff's automobile. It is contended that such factual situation was shown by the evidence in the trial below and that the presumption that defendant was negligent because the accident happened on plaintiff's side of the road was completely rebutted, and that under the circumstances the court erred in submitting the cause to the jury. We do not agree.

Defendant's driver, Mr. Klobas, testified of an effect substantiating defendant's contentions contained in the next preceding paragraph. The testimony of the investigating officer tended in some respect to corroborate Klobas' statement. The officer had seen some automobile tracks in the general area where Klobas allegedly saw the third automobile.

Plaintiff's evidence on this point was of contradictory effect. Her father stated he saw no car immediately ahead of defendant's. Mr. Baird, driver of the car next behind the Deckard car, said he saw no car going east on the street where the collision occurred (Apache) just before the collision.

The record discloses that the court in the trial below instructed the jury by instructions nos. 12 and 13 on both unavoidable accident and sudden emergency. Defendant neither in the trial court did nor here does raise any objection to such instructions and they appear to be proper.

In Garner v. Myers, Okl., 318 P.2d 410, this court reversed a judgment granted a defendant under circumstances similar to those defendant alleges here. We there

held that the plaintiff was entitled to a new trial where the trial court had failed to instruct as to the presumption of defendant's negligence in driving on the wrong side of the highway at the time of the accident and as to how the defendant could discharge the burden of overcoming such presumption. There, as here, the defendant was the party upon whom the burden rested to overcome the presumption created by the statute.

It was there said that whether or not the defendant's burden of proof was met, or discharged, was properly for determination by the jury, rather than the court, on the basis of the evidence presented.

The case of South Western Bell Telephone Co. v. Martin, Okl., 370 P.2d 840, was also factually similar to the situation defendant alleges here, in that at the time the collision involved in that case occurred defendant there was on the wrong side of the road and by reason of such fact plaintiff was determined to have made out a prima facie case. Defendant contended he had discharged the burden resting upon him to show that his being there was not his fault, but resulted from a sudden emergency. In such case, it was decided that whether the defendant had discharged the burden of proof so as to make it appear equally as reasonable that he was on the wrong side of the road through no fault of his, as that he was negligently so, was for determination by the jury, rather than the court.

■ As was shown hereinabove, an issue of fact was created by the evidence. In 8 Am.Jur.2d p. 570, Automobiles and Highway Traffic, Sec. 1013, is the following language:

"* * * If there is evidence which would sustain a verdict against the defendant, even though such evidence is simply of the violation of a legal requirement, the plaintiff is entitled to have the question of negligence submitted to the jury unless it is clear that the negligent act had no causal connection with the accident, or that his

own lack of due care contributed to his injury * * *"

The question of whether or not defendant met the burden of proof cast upon him under the evidence here was for the determination of the jury, rather than the court.

In its second proposition defendant submits that the $50,000.00 verdict was excessive, that it resulted from prejudice and sympathy of the jury for the plaintiff, and that this was caused by the court's erroneously permitting plaintiff to produce evidence as to the mere possibility of future disability of plaintiff, rather than confining the plaintiff's evidence as to permanent injuries to reasonable probability, or medical certainty. It is not contended that the court's instructions were other than proper.

Defendant contends that for plaintiff to make out her case her expert witnesses should have said there would be, or probably would be in the future ill-effects from her injuries; that that is required by decisions of this court in Cohenour v. Smart, 205 Okl. 668, 240 P.2d 91, and Oklahoma Natural Gas Company v. Kelly, 194 Okl. 646, 153 P.2d 1010.

In those cases it was said that evidence given by doctors that a certain cause "might", "could" or "possibly" did or would bring about a certain result is competent and may have some probative value, but generally requires corroboration or supplementation to make out a prima facie case.

On the other hand, plaintiff points out that the relevant portions of the decisions in those cases are not, under the circumstances here, persuasive as to defendant's contention, and that the record reflects no palpable error on the part of either the court or jury.

Plaintiff's evidence, considered in a light most favorable to her, showed that she sustained extensive lacerations of scalp, forehead and chin, a compound fracture of the skull, and shock due to loss of blood. Doctor B. W. S., who attended plaintiff upon her admission to the hospital, testified

that the lacerations of her scalp and forehead projected in several directions and were of such magnitude that part of the scalp had evulsed away from the skull to the extent that the hand could be put some five or six inches between the scalp and skull; that bone was broken in the skull an inch and a half or two inches long and from a quarter inch to half an inch wide, and that hair and debris were imbedded in it. There was evidence that plaintiff had been thrown from the car. Dr. B. W. S. further testified that it was his assumption that she had been thrown against the dashboard or windshield; that she was a moving object that struck against unmoving broken glass. Dr. F. testified that the sudden thrusting of the human body against an object with great force will cause the brain to be moved inside, and perhaps against the cranial cavity so that the brain will be bruised against the skull, and that damage can thus occur or can occur by the forming of scar tissue on the brain as it heals. He said that scarring may be damaging to or destructive of nerve cells and that cells, once destroyed, do not regenerate. He further said that such condition could produce and was compatible with the abnormality he observed in plaintiff's electroencephalographic tracings, and concerning which he testified; that the abnormal findings in the electroencephalogram were of the type he had seen in patients with lesions produced by trauma and in epilepsy.

Dr. A., a practicing psychologist, testified that the Bender-Gestalt test is actually a test of perceptual coordination; that a boy or girl is asked to look at an unfamiliar geometric design and then take a pencil and just copy this design down on paper. He stated that 99.44% above the age of 5 or 6 will reproduce such designs accurately but that those who have some organic difficulty will distort what they see. He stated:

"*  *  * In other words, they may see it as rotated or the figure is not joined together, or they may see it in some disturbed way, and this in part was the case with René Deckard.

"*  *  * But on the basis of the test results which I got, if I hadn't —if René had not been sent to me by a neurologist, I would have sent her to a neurologist for an examination, because I felt that there were indicators of organic brain damage."

He further stated that René was too withdrawn "and that unless something is done this will continue and, second that she is a depressed little girl, feels blue, depressed *  *  * has a tendency to be irritable at times." Dr. A. expressed the opinion that she would need repeated meetings with either a psychiatrist or psychologist skilled in working with children. Testimony of effect that there was "evidence of a left cervical branch of the facial nerve paralysis with inability to evert left, lower lip" and that there was "left cervical facial nerve disfunction" was introduced. Personality change was testified to by plaintiff's mother.

Dr. A. S. testified that certain X-rays showed that the depth of the fracture was through the outer skull table, and that a fragment of bone was driven down below the normal level of the skull vault. He expressed it as his opinion that plaintiff has sustained organic brain damage, and that she would have to be "watched medically" in the future.

Dr. A. S. further testified as follows:

"A: Well, we have the portion of the electroencephalogram of this patient, also his report. But there are very definite spike formation findings in the electroencephalogram.

"Q: Now, then, Doctor, I would ask you if those formations are compatible with an injury to the brain caused by head trauma?

"A: Yes.

"Q: Have you talked to Dr. Allison concerning the reports and findings that he has made as a result of

the psychological tests that have been administered?

"A: Yes.

"Q: And what did Dr. Allison tell you?

"A: Well, the girl has a relatively normal I. Q.; but on certain of the testings, especially the Bender-Gestalt, there is evidence of organic brain damage.

"Q: Is that compatible with the injury which she received, of the EEG's which have previously been performed, and your own clinical examination of this little girl?

"A: It is compatible, yes.

"Q: Doctor, on the basis of your examination and the consultations that you have made, and on the basis of the history obtained, do you have an opinion as to whether or not Edith René did sustain brain damage as a result of the accident on the night of November 15, 1961?

"A: I think she sustained some brain damage, yes.

"Q: Now then, Doctor, can you tell the Court and jury what effect this brain damage is going to have on this little girl during the remainder of her life?

"A: This is a very difficult question to answer, at her age. There are a number of possibilities that can occur. All I think that we should say is that she will have to be watched, further brain waves will have to be run * * "

Admitted in evidence, without objection, were hospital reports, X-rays, and electro-encephalographic tracings and films which furnish objective evidence of the condition of the plaintiff. There was medical testimony that the scars on plaintiff's scalp, forehead and chin were permanent; that she had become and, absent repeated sessions with a competent children's counselling expert would become, progressively more withdrawn in personality.

■ A decision upon defendant's proposition involves the necessity for deciding whether the court erred in allowing the jury to decide whether plaintiff suffered permanent ill effects from her injuries.

Under the facts of this case and the authorities to which reference is herein made, we hold it did not.

25 C.J.S. Damages § 28, p. 493, reads:

"The rule against the recovery of uncertain damages generally has been directed against uncertainty as to cause rather than uncertainty as to measure or extent."

See Cohenour v. Smart, supra, and Oklahoma Natural Gas Company v. Kelly, supra.

Of cases where it is the amount of damage that is uncertain, it is said in the cited C.J.S. paragraph:

"* * * in such cases plaintiff is not denied all right of recovery, and the amount is fixed by the court or by the jury in the exercise of a sound discretion under proper instructions from the court."

As we see it, the question here is not whether plaintiff will experience future disability, but the extent thereof. Edwards v. Chandler, Okl., 308 P.2d 295.

Defendant asserts that the judgment of $50,000.00 is excessive. Here there was evidence warranting the jury in finding that plaintiff suffered a skull fracture and brain injury and in believing that in the future she will probably suffer ill effects of a mental, physical and emotional nature and that such will probably adversely affect her personality, all as a result of defendant's driver's negligence.

■ A new trial should not be granted on the sole ground of excessive damages unless the amount awarded be so flagrantly outrageous and extravagant as to clearly show that the jury was actuated by passion, partiality or prejudice. Tulsa City Lines v. Geiger, Okl., 275 P.2d 325. The damages awarded plaintiff have not ·

been shown to have been given her under such circumstances.

The judgment is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.