## OKLAHOMA NATURAL GAS CO. v. KELLY.

No. 31249.   Oct. 17, 1944.

Rehearing Denied Dec. 12, 1944.

153 P. 2d 1010.

Ames, Monnet, Hayes & Brown, of Oklahoma City, for plaintiff in error.

John Barry and Mark Ingle, both of Oklahoma City, for defendant in error.

HURST, J. The plaintiff, Genevieve Kelly, sued the defendant, Oklahoma Natural Gas Company, to recover damages for personal injuries. The jury returned a verdict for plaintiff for $1,700, on which judgment was rendered. The defendant appeals.

The plaintiff introduced evidence reasonably tending to establish that the injuries were sustained on April 7, 1941, at about 8 o'clock a.m., when a truck owned and operated by the defendant negligently ran into the back of the car driven by plaintiff's sister and in which plaintiff was riding, seve-

ly jostling her about in the car and shaking and jarring her; that just prior to the accident she was a normal person, 25 years of age, in good health, physically sound and with no curvature of the spine; that immediately after the accident she had a headache, pain in the neck and back, and was nervous and nauseated; that she worked that day until 2 p.m., when she went to a chiropractor for treatment for the injuries; that her sleep was affected for about a month after the accident; that her menstrual periods were irregular for about two months after the accident; that up to May 27, 1942, at the time of the trial, she continued to suffer with headaches, nervousness, low blood pressure, fast heart beat, neuritis in her left arm, and had pain in the region of her back and neck, and tired often and easily; that her spine had been curved from an inch to an inch and one-eighth since the accident; that the curvature of the spine was permanent and would continue to cause pain, and would probably get worse; that it might be cured by chiropractic treatments if she would quit work and take treatments regularly for about six months; that she had taken 75 or 80 chiropractic treatments since the accident and her doctor bill therefore amounted to about $225.

Two chiropractors testified as expert witnesses for the plaintiff that the curvature of the spine, fast heart beat, low blood pressure and the pain of which she complained "could" have been caused by the impact, which was hard enough to push the standing car in which plaintiff was riding from six to ten feet. Plaintiff's expert witnesses were not asked, and did not testify, whether, in their opinion, the injuries complained of were "probably" caused by the accident.

Two medical doctors called as experts by the defendant testified that, in their opinion, the curvature of plaintiff's spine was permanent and congenital, and was caused either by infantile paralysis or by an improper posture during the growing period, and

that it had existed for from eight to thirteen years. They testified that in their opinion it could not have been caused by the accident.

There is evidence that the curvature of the spine could have been produced by either of four different causes, (1) by the impact, (2) by improper posture during the growing period, (3) by adverse chemistry (soft bones), or (4) by temperature of fever. The plaintiff's evidence and that of the chiropractors reasonably tended to negative the idea that the curvature of her spine was brought about by the last three named causes. There was no evidence that in fact she had soft bones as a child, that in fact she had high fever or temperature such as would bring about the curvature of her spine, or that in fact her condition was brought about by an improper posture during the growing period. The opinion of the defendant's expert witnesses that her condition was brought about by an improper posture during the growing period is negatived by the fact, testified to by plaintiff and her witnesses, that she had no back trouble or curvature of the spine prior to the accident.

The defendant admits that if the evidence was sufficient to submit to the jury the question of whether the curvature of the spine was caused by the accident, the verdict was right and the judgment should be sustained. Its sole contention is that the evidence was not sufficient to submit that question to the jury, and that consequently the verdict is excessive and a new trial should be ordered. It says that if a qualified expert witness (and it admits that a chiropractor may be such a witness) had testified that "the curvature of the spine was either the result of the accident or probably resulted therefrom," it would have been proper to submit to the jury the question of whether the accident caused the curvature of the spine, but that since the experts testified only that the curvature "could" have been caused by the accident, it was improper to submit the question to the jury, and that the verdict was

based upon conjecture and speculation.

The plaintiff does not contend that it was not necessary that the cause and extent of the curvature of her spine be established by the testimony of skilled and professional persons. Her contention is that it was so established by the opinion testimony of the two chiropractors when considered in connection with the other evidence, including that as to her condition before and after the accident.

While there is authority to the contrary, we are committed to the rule that opinion evidence, such as that given by the plaintiff's expert witnesses, that a certain cause "might", "could" or "possibly " did or would bring about a certain result is competent and may have some probative value. Glen L. Wigton Motor Co. v. Phillips, 163 Okla. 160, 21 P. 2d 751, and authorities there cited. See, also, 20 Am. Jur. 733; L.R. A. 1915A, at p. 1070; 22 C. J. 721, notes 60 and 61; 32 C. J. S. 366, notes 20 and 21. The value of such evidence is ordinarily for the trier of the facts. But where such evidence is not corroborated or supplemented by other evidence, and where the fact necessary to be established must be proved by testimony of a qualified expert, such evidence, standing alone, is generally held to be insufficient to make out a prima facie case. 135 A. L. R. 516-529, annotation.

On the question of whether the accident "could" cause the curvature of the spine, there was a disagreement between the chiropractors testifying for the plaintiff and the medical doctors testifying for the defendant, but it was for the jury to resolve the conflict and to give such weight to the testimony of each of the expert witnesses as it deemed proper. Dalton v. Bilbo, 126 Okla. 139, 258 P. 274; Inter Ocean Oil Co. v. Marshall, 166 Okla. 118, 26 P. 2d 399; 22 C. J. 738; 32 C. J. S. 378.

We are of the opinion, and hold, that the evidence was sufficient to submit to the jury the question of whether the injuries complained of by the plaintiff, including the curvature of the spine, were caused by the accident. True, as above stated, the testimony of plaintiff's expert witnesses that said injuries "could" have been caused by the accident, standing alone, would not have been sufficient to submit to the jury the question of whether the curvature of the spine and the discomfort and injuries springing therefrom were caused by the accident, as the answer thereto would have been based upon conjecture and speculation, since it was shown that the curvature of the spine could have been brought about by several different causes. But proof of the cause and effect of the injuries in such a case need not rest entirely upon expert testimony. And when the expert testimony that the curvature of the spine "could" have been caused by the accident is considered along with the testimony that there was no curvature of the spine before, but was shortly after, the accident, and there is no factual evidence tending to prove any other cause, and the plaintiff's evidence reasonably tended to exclude every other possible cause, the jury could reasonably find that it was more probable that the curvature of plaintiff's spine and the ailments resulting therefrom were caused by the accident than by any other cause, and such a finding cannot be said to be based upon speculation and conjecture. Nu-Way Laundry & Cleaners v. State Industrial Commission, 194 Okla. 101, 147 P. 2d 795; Griesel v. Fabian, 184 Okla. 42, 84 P. 2d 634; Mid-Continent Petroleum Corp. v. Miller, 183 Okla. 27, 79 P. 2d 804; Skelly Oil Co. v. Collins, 181 Okla. 428, 74 P. 2d 619; Highway Construction Co. v. Shue, 173 Okla. 456, 49 P. 2d 203; Glen L. Wigton Motor Co. v. Phillips, above; 135 A.L.R. 532, annotation.

Affirmed.

CORN, C. J., and OSBORN, DAVISON, and ARNOLD, JJ., concur. GIBSON, V.C.J., and RILEY, BAYLESS, and WELCH, JJ., dissent.