COHENOUR et al. v. SMART.

No. 34125.   Dec. 4, 1951.

Rehearing Denied Jan. 29, 1952.

*240 P. 2d 91.*

Alex Cheek and Jas. C. Cheek, (Cheek, Cheek & Cheek), Oklahoma City, for plaintiffs in error.

Reily, Reily & Spurr, Shawnee, for defendant in error.

HALLEY, V. C. J. The parties will be referred to according to the positions they occupied in the lower court. The plaintiff was a resident of Shawnee, Oklahoma. On the morning of December 12, 1946, he was traveling east in his own automobile between Oklahoma City and Shawnee and was about six miles west of Shawnee; there was a traffic jam and the plaintiff, Smart, had slowed down his car, and a truck owned by defendant Cohenour and driven by a man named Vick ran into the rear of plaintiff's car, causing some damage to the car, for which settlement was made. The plaintiff filed an action 13 months later in the district court of Pottawatomie county to recover for alleged personal injuries. He claimed that at the time the truck ran into his automobile he was seriously injured. The case was tried to a jury and a verdict rendered for the plaintiff in the sum of $5,000, the amount of insurance that defendant Cohenour was carrying as a carrier for hire in this state.

The plaintiff's evidence showed that he was in good health and good physical condition prior to this accident, and that after the accident he began to have trouble and became disabled by virtue of the injuries that he received. He testified on cross-examination that twelve years previous to the time of the trial he had been in an automobile accident, and also that he had been in another automobile accident in 1945, but claimed that he suffered no permament injuries as the result of these former accidents.

Defendants' evidence showed that at the time of the accident with defendant Cohenour's truck, the plaintiff got out of his car and walked around, stood and talked, and gave no indication of any injury whatsoever, and that he told the highway patrolman investigating the accident that he (Smart) "was fortunate because he had a weak back and was not even hurt." The evidence showed that the plaintiff had been a frequent visitor to the offices of physicians and surgeons both before and after the accident out of which this action arose, and that to none of the doctors who saw him after the accident did he complain of having received any injuries on the 12th day of December, 1946. The evidence further showed that he had at some time had a back injury, as two of his vertebrae were compressed, and the defendant's testimony was that plaintiff had told one doctor that he had been injured in an accident twelve years before and in another accident seven years before. The plaintiff testified in rebuttal that he had told that doctor seven months instead of seven years. He claimed to have seen a Dr. Carson in December after he was hurt, and said it was Dr. John Carson, but when it was revealed that Dr. John Carson had made an affidavit that he had not seen the plaintiff, the witness testified that it was Dr. John Carson's father that he saw rather than Dr. John Carson.

The only professional witness for the plaintiff was Dr. Rice, who examined him two years after the accident for the purpose of testifying in the trial of this case, and his testimony was that the plaintiff's condition *could* have been caused by the accident on December 12, 1946. His testimony in this regard is not definite: he never said the plaintiff's condition probably was caused by this accident, but only that it could have been. We quote his testimony:

"Q. Now, Doctor, from the history which he gave you of this accident on December 12, 1946, could that accident have caused the condition in his back which you say would disable him and cause the compression condition you found? A. It could. . . ."

And on cross-examination:

"Q. Doctor, could it have been practical, possible, probable that he sustained this injury on a date other than

the one he told you about? A. It could have been."

Defendants evidence showed that plaintiff had been to see Dr. Phil White in the month of November before the accident in question, and also in December after the accident, and that he never told Dr. White anything about having received any injury on December 12, 1946.

The plaintiff denied that he ever told the highway patrolman at the scene of the accident that he was not hurt.

Although there are numerous questions raised by the defendants in their briefs, we believe that the discussion of one question will be sufficient for the proper disposition of this case. That question is: Did the plaintiff establish by expert testimony that the plaintiff's injuries were a result of the accident which occurred on December 12, 1946? The answer to this question necessitates the consideration of two points, the first being: Did Dr. Rice testify with sufficient definiteness that plaintiff's injuries were the result of the accident of December 12, 1946? and second: Were the other accidents in which plaintiff was involved properly eliminated as possible causes of his alleged injuries? We think the answer is "No" on each point. All Dr. Rice ever testified to on the first point was that the accident of December 12, 1946, could have caused plaintiff's injuries, and not that it probably caused them. We think that it was incumbent upon the plaintiff, under the facts in this case, to prove not only that the accident could have caused the injury, but that it probably did. This question has been considered by numerous courts, and the authorities have been collected in the exhaustive note to the case of Harry T. Burton v. Holden & Martin Lumber Co., 112 Vt. 17, 20 A. 2d 99, 135 A.L.R. 512, where may be found most of the cases in the United States up to that time on the question; and the authorities clearly hold that medical testimony as to the possibility of a causal relation between a given accident or injury and the subsequent impaired physcial condition of the person injured is not sufficient, standing alone, to establish such a relation. "Testimony as to possibility" is said to mean testimony in which the witness asserts that the accident or injury "may have" or "could have" caused, or "possibly did" cause the subsequent physical condition, or that a given physical condition "might have", "may have", "could have", or "possibly did" result from a previous accident or injury—testimony, that is, which is confined to words indicating the possibility or chance of the existence of the causal relation in question, and which does not include words indicating the probability or likelihood of its existence. In Nu-Way Laundry & Cleaners v. State Industrial Commission, 194 Okla. 101, 147 P. 2d 795, we held that it was necessary that the testimony establish that a disability in a Workman's Compensation case was the probable result of the injury sustained. It is our opinion that where the evidence of the plaintiff does not show by expert testimony and all the surrounding facts and circumstances that the injury could have been caused by and was the probable result of the accident, then the plaintiff has not established sufficient facts to make out a cause of action.

Two of the most favorable decisions for the plaintiff are Oklahoma Natural Gas Co. v. Kelly, 194 Okla. 646, 153 P. 2d 1010, and Glen L. Wigton Motor Co. v. Phillips, 163 Okla. 160, 21 P. 2d 751. All the facts and circumstances of those cases indicated that the plaintiff's injury could have been and probably was caused by the negligence of the defendant in each case, while here the only testimony is that the accident on December 12, 1946, could have caused the injury to the plaintiff—not that it probably did. In the Wigton case, supra, which was a Workman's Compensation case, the claimant had been hit in the eye by a pair of pliers, and there was no question but that he did receive some eye injury. There was a difference in the opinion of the doctors

on the question, but one of the physicians testified that his eye condition could have been caused by the injury received, and there was no question in the record but that he actually did receive an injury to his eye while in the employ of the respondent. In Oklahoma Natural Gas Co. v. Kelly, supra, the plaintiff had sustained a curvature of the spine, and the testimony was that she did not have any curvature of the spine prior to the accident and the negligence of the defendant, and the curvature of her spine could have been caused by the accident.

To us the evidence in this case does not measure up to that required in Oklahoma Natural Gas Co. v. Kelly, supra. We quote from that opinion:

"While there is authority to the contrary, we are committed to the rule that opinion evidence, such as that given by the plaintiff's . . . witnesses, that a certain cause 'might', 'could', or 'possibly' did or would bring about a certain result is competent and may have some probative value. Glen L. Wigton Motor Co. v. Phillips, 163 Okla. 160, 21 P. 2d 751, and authorities there cited. See, also, 20 Am. Jur. 733; L.R.A. 1915A, at p. 1070; 22 C. J. 721, notes 60 and 61; 32 C.J.S. 366, notes 20 and 21. The value of such evidence is ordinarily for the trier of the facts. But where such evidence is not corroborated or supplemented by other evidence, and where the facts necessary to be established must be proved by testimony of a qualified expert, such evidence, standing alone, is generally held to be insufficient to make out a prima facie case. 135 A.L.R. 516-529, annotation."

The corroborating evidence is lacking here.

We also adhere to the rule that where an injury is of such character as to require skilled and professional men to determine the cause thereof, the question is one of science and must be proved by their testimony. Griesel, Ex'r, v. Fabian, 184 Okla. 42, 84 P. 2d 634.

Now, as to our second point, that plaintiff failed to eliminate by expert testimony the possibility that his injuries might have been caused by one of the other accidents in which he was involved: Dr. Rice testified on cross-examination that plaintiff's injuries could have been caused at another time than December 12, 1946. The experts were agreed that plaintiff's injury was an old one, but how old was not definitely determined. We do not appear to have passed on this exact question, but it seems to be well settled, as said in Hunt v. Armour & Co., 345 Mo. 677, 136 S.W. 2d 312:

"It is now settled that, in matters where the evidence does not exclude all other causes and in which no layman could know or have any reasonable basis for an inference as to cause, opinions of doctors that a certain occurrence or condition might, could, or would produce a certain result is no more than an assurance that such a result was scientifically possible, and does not alone constitute substantial evidence that such occurrence or condition did cause it."

In Burton v. Holden & Martin Lumber Co., supra, this statement is made:

" . . . But Sullivan v. Old Colony Street Ry. Co., 197 Mass. 512, 515, 83 N.E. 1091, 125 Am. St. Rep. 378, cites Sullivan v. Boston Elevated Ry. Co., supra, to what may be intended to be a proposition that medical evidence of 'possibility' may make an otherwise insufficient proof of causation sufficient. This may have been the theory upon which the other two Massachusetts cases were decided. Except upon such theory the Commissioner's conclusion cannot be sustained. We cannot endorse such a proposition where the evidence does not bar all other causes. Unless the other evidence fairly warrants a finding of causation or excludes all other causes, a conclusion based upon medical evidence of 'possibility' would be entirely speculative."

We think that until the plaintiff has eliminated other possible causes of his injuries as being the sufficient cause, he should not recover.

We also think the court erred in admitting testimony with respect to the

termination of employment of the defendant Cohenour's driver in this accident. The facts concerning this matter were not material to this lawsuit, and it was error to admit them.

We do not think it is necessary to answer the other question raised by the defendants.

This case is reversed for a new trial.

CORN, GIBSON, JOHNSON, and O'NEAL, JJ., concur. WELCH and DAVISON, JJ., dissent.