Mack B. DELK, Plaintiff in Error,

v.

Kay GILL, Defendant in Error.

No. 42095.

Supreme Court of Oklahoma.

Dec. 9, 1969.

Green, Feldman & Hall, W. E. Green, Raymond G. Feldman, Wm. S. Hall, Tulsa, for plaintiff in error.

Melone, Robertson & Melone, Jerry M. Melone, Tulsa, for defendant in error.

BLACKBIRD, Justice.

Defendant in error, hereinafter referred to as "plaintiff", obtained a verdict and judgment for damages in the sum of $10,-200.00 against plaintiff in error, a Tulsa dentist, hereinafter referred to as "defendant", on account of her personal injuries, pain and suffering, etc., allegedly caused by defendant, in ostensibly attempting to relieve a post-operative condition in plaintiff's mouth, after his extraction of her lower, right, first molar tooth.

In his present appeal, defendant asserts that the trial court erred in overruling his challenges to the sufficiency of the evidence, and that a verdict should have been directed in his favor, because of the absence of competent evidence that any act of his was the proximate cause of the condition of plaintiff's mouth. This condition was diagnosed as a dislocation of the left temporal mandibular joint, referred to in some of the expert testimony by the abbreviation "TMJ".

Plaintiff's testimony tended to make it appear that this joint was dislocated when she returned to defendant's office, 25 days after the molar's extraction, in an attempt to obtain relief from a condition she testified had existed ever since the extraction. This condition was described as "trismus", or a continuous muscle spasm, in her left jaw, which her evidence showed caused her teeth to remain "tight together" and prevented her from opening her mouth to chew, or ingest, solid food. On this occasion, according to plaintiff's testimony, defendant "placed his thumb on this side and his fingers on this side of my jaw * * *. He shoved it down, the action was down and back, and then he twisted it this way and this way, two or three times until it popped out on this side, right out of the socket, and it was an audible pop, a loud pop and there was sharp pain."

Defendant testified that plaintiff came out from under the general anesthetic, after the extraction, with a muscle spasm in her jaw; but his testimony was to the further effect that, except for this, and "pyorrhea involvement", the extraction was nothing out of the ordinary, and that, when she later came to his office on the above mentioned post-operative occasion, he did not force any movement of her jaw, but merely

had her go through certain exercises (he demonstrated to the jury) in opening and closing her mouth.

Plaintiff's only expert witness was Dr. S, a Wichita dentist specializing in "maxilla facial surgery", to whom she was referred by another Kansas dentist, about a year and a half after the extraction and some time after she had been to other out-of-state dentists, and even to the Mayo Clinic, seeking correction of her condition. When Dr. S, who testified by deposition, was asked if plaintiff's condition could have been caused by a "violent wrenching" of her jaw, such as she had testified the defendant gave it, he answered: "I don't know because I don't know what causes this disfunction in any of the cases. * * *". Other portions of his testimony (most of which are quoted in defendant's brief) are as follows:

"Q. Can this disfunction be caused by a sudden motion or jerking or tugging of the jaw?

A. In the years that I have done this work, I have not been able to pinpoint any particular cause for it, except in a few isolated instances where a patient was in a car wreck. * * *

* * * * * *

Q. Did trauma cause it in the incidence which related to a person in a car wreck?

A. * * * All of these acute traumatic cases resolve in a matter of a few weeks.

Q. Well—

A. The most a couple of months.

Q. Let us assume some additional facts, Doctor. Assuming this trismus had occurred for a period of sometime which you described as a muscular spasm which held the lower jaw up against the upper jaw and then a sudden wrenching or movement was performed by the doctor or dentist at which time he heard a popping in the joint and immediately following was severe and tremendous pain and assume

further then, that immediately following this motion or movement, the mouth became movable, or the lower jaw became movable. Can you tell us, sir, now, this is again upon this assumption of facts. Could this type and kind of an action cause the disability that she was suffering when she came to you?

A. I can see how it could possibly so, yes. But I can't say probably, possibly, yes.

* * * * * *

Q. From your case history and examination and treatments, you have been unable to put your finger on any other thing that may have caused this?

A. Yes, sir, in her case, I have nothing else to go by.

Q. Other than this, you have no other reason for it happening?

A. No, sir.

* * * * * *

Q. Well, doctor, as I gather from all of your testimony here, you just have no way on earth of determining what produced or caused this condition that you found in this patient?

A. That is right, sir.

Q. And you cannot relate it to anything from the facts that you have?

A. No, sir.

* * * * * *

Q. Can you ascribe any other thing that could have caused it?

A. No."

Defendant's argument for reversal is based upon what his brief characterizes as "the requirement that probable cause for the condition complained of must be established by competent, expert opinion evidence * * *"; and he contends that Dr. S's testimony does not meet this requirement under Cohenour v. Smart, 205 Okl. 668, 240 P.2d 91, in which we held:

"1. Where the evidence of the expert witness is only that an accident

could' have been the cause of an injury, it is not sufficient unless the witness goes further and says that it was also the probable cause of the injury.

"2. Physician's opinion that a certain occurrence might, could, or would produce a certain result is no more than an assurance that such a result was scientifically possible and does not alone constitute substantial evidence that such occurrence or condition did cause the result where the evidence does not exclude all other causes, and no layman could know or have any reasonable basis for an inference regarding cause."

Defendant also quotes Hunt v. Armour & Co., 345 Mo. 677, 136 S.W.2d 312 (p. 316), to a similar general effect. Defendant's brief also says that the issue is whether Dr. S's testimony "takes the further step required by law" and excludes the possibility that plaintiff's condition is the result of some other cause than his treatment of her.

Plaintiff contends, in substance, that whether or not the evidence was sufficient to go to the jury on the question of whether or not defendant's acts caused her condition, does not depend entirely upon the testimony of Dr. S, or any other expert witness, but that, under Oklahoma Natural Gas Co. v. Kelly, 194 Okl. 646, 153 P.2d 1010, (which is not in conflict with either of the above cases) proof of proximate cause "need not rest entirely" upon expert testimony, "but may rest in part upon non-expert testimony" (syll. 3). Plaintiff says that, in the present case, her testimony, and that of her husband, together with other parts of the record she points to, which among other things, reasonably tends to exclude every cause, which (according to the evidence) could possibly cause a TMJ condition, such as hers, other than the hereinbefore mentioned manipulation of her jaws by defendant, when considered with Dr. S's testimony, were sufficient, under the Kelly case, for submission of the issue of proximate cause to the jury. We agree. Without describing the features of the record, or the evidence to which plaintiff re-

fers, we think it is sufficient to say that we have thoroughly examined the entire record, and it is our opinion that, when considered as a whole, it is sufficient, under the principles laid down and followed in the Kelly case, to warrant the overruling of defendant's challenges to the evidence and the submission of the case to the jury on the issue of whether or not defendant's claimed manipulation of plaintiff's jaws was the proximate cause of her suffering and abnormality in that area. The record clearly and specifically shows that, before ruling on defendant's challenges to the evidence, the Trial Judge thoroughly considered, and correctly analyzed, the evidence in the light of virtually the same arguments and authorities presented to this Court in the parties' briefs; and we think his conclusions and decisions therefrom were correct.

The judgment of the trial court is therefore affirmed.

IRWIN, C. J., and DAVISON, WILLIAMS, JACKSON, HODGES and McINERNEY, JJ., concur.

BERRY, V. C. J., concurs in results.