DENILLE DOERR, by her guardian THOMAS E. DOERR, Plaintiff and Appellant, v. ARTHUR J. MOVIUS, Defendant and Respondent.

No. 11677.
Submitted December 9, 1969.
Decided January 5, 1970.
463 P.2d 477.

Joseph P. Hennessey, argued, Billings, for appellant.

Anderson, Symmes, Forbes, Peete & Brown, Weymouth D. Symmes, argued, Billings, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

Defendant in this medical malpractice action was granted a directed verdict at the close of the plaintiff's evidence. Plaintiff's motion for a new trial was denied and this appeal is taken from the denial of that motion and from the directed verdict.

During October 1965, Denille Doerr, plaintiff herein, was taken to the Billings Clinic by her mother to see a pediatrician named Dr. Bruce L. Anderson. The girl was then 8 years old and had developed a small lump on her lower pubic area. Her mother told Dr. Anderson that the child had fallen from her bicycle and the lump seemed to develop after that accident. Dr. Anderson examined the child, told the mother the lump might be a hernia and referred her to Dr. Arthur J. Movius, defendant herein.

Dr. Movius is a general surgeon associated with the Billings Clinic. His specialty includes abdominal surgery. Dr. Movius examined the child a few days after Dr. Anderson had examined her and finding an irreducible mass just outside the left

inguinal ring which looked like a hernia and felt like an extruded hernial sac, he diagnosed a probable left inguinal hernia.

Dr. Movius recommended that the child be operated on to repair the apparent defect. The mother signed the written consent form provided by the hospital and the operation took place on October 27, 1965. During the operation Dr. Movius discovered that the lump on the child's pubic area was caused by a fatty pad and there was no hernia of any type on the left side. It was not necessary to cut any muscle layers, only the skin was opened. Dr. Movius then asked the surgical nurse to notify the mother that there was no hernia on the left side and to seek the mother's permission for him to operate on the right side of the child to determine if there was a hernia there. The mother gave the surgical nurse the oral consent and Dr. Movius made an incision on the right side, again only penetrating through the skin. He found no evidence of any hernia and closed the incision.

At the trial plaintiff called Dr. Movius as an adverse witness and questioned him about the diagnostic procedures used to discover the existence of different types of hernias. Particular attention was devoted to hernias in small children, and Dr. Movius explained that the smallness of children's body structures and the softness of their tissues make it much more difficult to correctly diagnose a hernia in a child. He also testified that medical texts report 66% of children with a hernia will have one on each side of the abdomen, rather than a single hernia on one side of the abdomen only; that occasionally hernia operations on children will determine that the hernia is actually on the side opposite the suspected side.

Dr. Movius admitted that his diagnosis of a probable hernia was wrong and stated he had never seen a fatty pad such as this before. There was no damage to the girl except the two scars on her lower abdomen.

The principal issue in this case is whether the court erred in directing the verdict for the defendant.

Plaintiff contends that a prima facie case was established by a showing of absence of an informed consent on the part of the patient or one acting in her behalf; by a showing of a deviation by the doctor from an established proper medical procedure; and, that either showing is sufficient to establish a prima facie case of negligence.

The general rule on informed consent was set forth by this Court in Negaard v. Estate of Feda, 152 Mont. 47, 446 P.2d 436, 25 St.Rep. 632. The duty to disclose to assure that an informed consent is obtained was recognized and described as a matter of medical judgment. This duty to disclose was limited to those disclosures which a reasonable practitioner would make under similar circumstances. If the doctor obtained an informed consent and proceeded as a competent medical man would in a similar situation, his course of action should not be questioned.

"The gist of the 'informed consent' theory of liability is that a physician is under a duty under some circumstances to warn his patient of known risks of proposed treatment so that the patient will be in a position to make an intelligent decision as to whether he will submit to such treatment." Negaard v. Estate of Feda, supra.

The cases which plaintiff presents in her brief and those she refers us to in the annotation in 79 A.L.R.2d 1028, indicate that the circumstances under which the doctrine of informed consent is most often applied are those such as the following where dire consequences are a possible result of the treatment.

In Hunt v. Bradshaw, 242 N.C. 517, 88 S.E.2d 762, the plaintiff lost the use of his left hand after the doctor performed an operation to remove a small steel splinter from the patient's neck. The patient was not informed of the danger, and the operation was described as simple. The doctor in Corn v. French, 71 Nev. 280, 289 P.2d 173, was held to have inadequately disclosed to the patient the effects and extent of the operation described as merely exploratory but which in fact was an entire breast removal operation.

We find little comparison on the element of possible consequences between the cases cited above and this simple operation for the repair of a supposed hernia to which the mother had previously given her written consent. In this case there were no dire consequences to be suffered as a result of opening the child's right side. The worst possible consequence of expanding the operation to open the right side would be to create a small needless scar in a generally covered area of the body.

Plaintiff contends that a prima facie case of negligence can be established by showing a deviation from established proper medical procedure. In this case it must be noted that the only medical testimony produced by the plaintiff was that of Dr. Movius as an adverse witness. There is no other medical testimony direct, indirect or circumstantial refuting the defendant's contention that only a diagnostic error had been made. If a physician fails to make a properly skillful and careful diagnosis and makes an incorrect diagnosis, he may be held liable to the patient for the damage thus caused. Bakewell v. Kahle, 125 Mont. 89, 93, 232 P.2d 127.

"Nor is an incorrect diagnosis of itself sufficient to establish liability. The plaintiff must show that such mistake was due to failure to use ordinary care and diligence and to exercise reasonable learning, skill and judgment in his examination and treatment." Schumacher v. Murray Hospital, 58 Mont. 447, 467, 193 P. 397, 403.

"The undertaking of the physician is not to cure the patient, nor to insure that his treatment will be successful, but rather that he will treat the injury he is employed to treat with ordinary care, diligence and skill. His obligation requires only that he shall in his treatment employ such a degree of skill and diligence as surgeons practicing in the general neighborhood, pursuing the same line of practice, ordinarily display in like cases." Dunn v. Beck, 80 Mont. 414, 422, 260 P. 1047, 1050.

Testimony at the trial indicated what procedure is followed and what tests are used to diagnose a hernia; that bilateral

hernias are common in children; and, that difficulties inherent in examining children will occasionally result in an operation on the wrong side of the child. Two doctors examined the child and both diagnosed the probable existence of a hernia. The only test to determine if the lump was a fat pad or a hernia was to explore it surgically. The fat pad was discovered and Dr. Movius testified that it was unique in his experience of 33 years of practice as a general surgeon.

When a plaintiff produces evidence that is consistent with an hypothesis that the defendant is not negligent, and also with one that he is, his proof tends to establish neither. Schumacher v. Murray Hospital, 58 Mont. 447, 193 P. 397.

In the absence of a showing that the defendant acted without ordinary care, diligence and skill, or that he did not make a proper and skillful diagnosis, or that he deviated from established proper medical procedures as practiced in his neighborhood, we must uphold the trial court's directed verdict.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES CASTLES and HASWELL, and The HONORABLE LeROY L. McKINNON, District Judge, sitting for MR. JUSTICE JOHN W. BONNER, concur.