Chester HOLLAND, Appellant,

v.

J. R. STACY, Appellee.

No. 43888.

Supreme Court of Oklahoma.

May 2, 1972.

Durward McDaniel, Maurice G. Speers, and Love & Sullivan, Incorporated, by Claude E. Love, Oklahoma City, for appellant.

Foliart, Shepherd, Mills & Niemeyer, by James W. Shepherd, Oklahoma City, for appellee.

BARNES, Justice:

On October 18th, Appellant, hereinafter referred to as "plaintiff", was hospitalized in a hospital herein referred to as "M Hospital", at the request of Appellee, an Oklahoma City orthopedic surgeon, hereinafter

referred to as "defendant", for treatment of two infected or gangrenous toes on his left foot. Thereafter, on October 24th, while still hospitalized there, plaintiff suddenly became totally blind. After other doctors were consulted, the cause of plaintiff's blindness was diagnosed as a "retinal central arterial thrombosis."

Thereafter, plaintiff instituted the present action to recover damages from defendant, charging him with malpractice and negligence, and alleging, in effect, that this was the cause of his blindness. In his pleadings, plaintiff also alleged that he did not know just what caused his blindness and asserted the doctrine of res ipsa loquitur as applicable to the case.

At the trial, plaintiff attempted to establish that a drug called "elixir of roniacol", "roniacol", or "nicotinal cartrate", which was administered to him on defendant's order (along with other medications), caused the thrombosis. Plaintiff testified that about a teaspoon of the roniacol was given him three times a day and an alcoholic stimulant four times a day until October 23rd, when he told defendant he could not take it any longer because it was making him sick at his stomach. Plaintiff further testified that on October 24th, after he discovered he could not see, no more of such medications were prescribed for him; that a Dr. K took over the treatment of his toes until they were well when he left M Hospital in December, and that he has had no trouble with them since.

In his effort to show that the medications defendant prescribed for him caused his blindness, plaintiff called defendant to the stand as his witness and interrogated him extensively concerning them, especially the nicotinal or roniacol cartrate. During defendant's direct examination, plaintiff's counsel sought to show by his testimony that this roniacol was not recommended for patients, with a medical history like plaintiff's, by asking questions about certain statements in a 1964 publication of the American Medical Association's Council on Pharmacy and Chemistry called "New and Official Drugs." Under counsel's question-

ing, defendant admitted that this publication's purpose had been to "provide the standards for drugs used by the medical profession . . ."; and counsel read to him the following statement from it:

"Moreover, the drug should not be used on patients with *cerebral vascular* diseases since diminution of blood vessels which might occur *could be harmful.*" (Emphasis added)

When asked if he was familiar with this statement, defendant testified that it had "reference to a patient with high blood pressure which Mr. Holland did not have, and suddenly lowering that high blood pressure with large doses of basal dilators, causing circulatory trouble." Plaintiff's counsel then elicited from defendant the admission that he knew that, when a Dr. H had previously hospitalized plaintiff at W Hospital in March, 1955, on account of complaints of "headaches and difficulty in using his left hand," plaintiff's condition had been diagnosed as *"cerebral vascular lesion*, type unknown, but probably thrombosis." (Emphasis added)

Over the objection of plaintiff's counsel, defense counsel was then permitted to cross-examine defendant.

At the close of plaintiff's evidence, the court sustained defendant's demurrer to it. After judgment in defendant's favor was entered accordingly, plaintiff lodged the present appeal.

Under Propositions "III", "IV", and "VI" of plaintiff's brief, he contends the trial court erred in sustaining defendant's demurrer to his evidence, and in "refusing to invoke the doctrine of res ipsa loquitur"; and also that there was sufficient evidence that defendant had been guilty of negligence, in prescribing roniacol, that the court should have submitted this issue to the jury, even without benefit of said doctrine.

Under "III" and "VI", above, plaintiff points to testimony showing the complaints he made about the medications he was receiving and he contends this shows that defendant had notice, before October 24th,

"that something might be wrong . . . ." He asserts that, upon receipt of such notice, it became defendant's duty "to determine the correctness of his treatment and dosages." He further says that the trial court should have concluded that defendant owed him this duty "so that the Court should have passed the question to the jury to find whether or not there was a causal relation between the bitter tasting medicine . . . ." and plaintiff's subsequent blindness. Plaintiff says it is a matter of common knowledge that internal medication for a vascular disease in the foot does not ordinarily cause blindness unless there is something wrong with the medication. Under his Proposition IV, he says: "To be hospitalized for the treatment of a gangrenous toe, and, after five days of internal medication, to awaken blind is so extraordinary an occurrence within the general observations of mankind as to raise an inference of negligence." Plaintiff's position appears to be summed up in the following words of his brief: "Under the evidence adduced . . . by the plaintiff . . . the Trial Judge should have invoked the evidentiary rules of res ipsa loquitur and thereafter required . . . defendant to proceed with . . . evidence 'designed to explain the accident,' and to show lack of negligence on the part of the defendant."

 Plaintiff's arguments overlook an essential prerequisite for application of the doctrine of res ipsa loquitur. In St. John's Hospital & School of Nursing v. Chapman, Okl., 434 P.2d 160, and some of the other cases cited by plaintiff, it is made clear that one of the "foundation facts" to be established by the evidence to bring a case within this doctrine's application is "what thing" caused the injury. Here, there is no evidence establishing that either the alcoholic stimulant (often referred to in the evidence as "spirits fermenti") or the elixir of roniacol (nicotinal or roniacol cartrate) or a combination of the two, caused plaintiff's blindness.

 Plaintiff's argument under his PROPOSITION VI is, in substance, that his evidence was sufficient to withstand defendant's demurrer, even without being aided by application of the res ipsa loquitur doctrine. He refers to the hereinbefore quoted statement read from "New and Official Drugs," which his counsel read into the record during defendant's direct examination, and to defendant's testimony that said publication provided a standard for the use of drugs by the medical profession, and to defendant's admission that he knew plaintiff had been diagnosed by Dr. H in 1955 as having a cerebral vascular lesion of probable thrombosis type. On this basis, plaintiff argues that the evidence showed defendant "had violated this standard of his profession," and he urges that the trial court overlooked this in sustaining defendant's demurrer. Plaintiff's argument omits mention of that portion of defendant's testimony explaining, in the manner hereinbefore shown, the subject statement from "New and Official Drugs." As already related, in that portion of his testimony defendant explained that this statement, as to the possible harm of using roniacol on patients with cerebral vascular diseases, applied only to those with high blood pressure. As the publication "New and Official Drugs" was not introduced in evidence so as to reveal any of that publication's statements concerning the possible harm of prescribing roniacol for patients with cerebral vascular disorders— other than the one hereinbefore quoted from the record—and defendant's explanation of that statement appears never to have been contradicted by other evidence, defendant's said explanation must be accepted as the statement's correct meaning. When so interpreted, it applies only to patients with high blood pressure. As plaintiff is not shown to have had high blood pressure at any time material to this case, that statement cannot be regarded as evidence that taking roniacol caused plaintiff to become blind, or that it had any other pertinent, harmful effect upon him. Since plaintiff points to no other evidence for support of his position that his inception of roniacol, either by itself or ac-

companied by the spirits fermenti (he was taking), was the cause of his blindness—and we have found none—we can only conclude that plaintiff did not establish "what thing" caused his blindness. Thus his evidence lacked an essential foundation fact for applying the doctrine of res ipsa loquitur. On the other hand, the deposition of Dr. G, introduced in evidence by plaintiff, reveals at least one characteristic of plaintiff's earlier medical history—with which defendant had nothing to do—that might have caused plaintiff's blindness.

In view of the foregoing, we find the evidence insufficient for submission to the jury on the question of whether or not the medications administered to plaintiff under defendant's direction were the proximate cause of his blindness. It therefore follows that the trial court committed no error in sustaining defendant's demurrer to plaintiff's evidence.

In view of this determination on the principal issue in this appeal, there is no significance or merit in plaintiff's argument under his PROPOSITION II that the trial court's ruling on said demurrer was error for the further reason it precluded the jury from determining whether M Hospital's nurses, that attended plaintiff, were defendant's agents.

■ The same may be said of plaintiff's argument under his PROPOSITION V. From plaintiff's brief's reference to the record under this Proposition, his argument is apparently directed at the trial judge's oral remarks while considering whether to allow plaintiff's introduction of Dr. G's deposition into the evidence of the case. In the course of these remarks, the Judge expressed the opinion that this deposition, being that of a "Tulsa Osteopathic physician," would contain no "relevant testimony with reference to the standard of care in this community" (Oklahoma City). We see no materiality in this remark, especially since it had no effect in preventing plaintiff's desired introduction of this physician's deposition, and in view of the fact that the trial court's ruling on defendant's demurrer to the evidence was correct, irrespective of the court's view of what plaintiff's brief refers to as the "locality rule."

■ Under his PROPOSITION VII, plaintiff infers that the trial court's ruling on the demurrer was error for the further reason that Dr. K's cure of plaintiff's foot condition, by changing the method of treatment defendant had been using for it, established that defendant had not used "good judgment in choosing between methods of treatment." Since, as we view this case, plaintiff's entire effort was directed to recovery of damages on account of his blindness, it is our opinion that his argument under this Proposition is also irrelevant.

■ Under plaintiff's PROPOSITION I, he contends the trial court erred in allowing defense counsel to cross-examine defendant after he had testified on direct examination as a witness for plaintiff. Plaintiff says Oklahoma's "adverse witness statute", 12 O.S.1961, § 383, contains no express provision about this, as does the Kansas Statute, Kan.Civ.Pro.Stat., § 60–243(b), which, like Rule 43 of the 1966 Federal Rules of Civil Procedure, he says the trial court followed, allows such cross-examination on the subject-matter of the witness' examination in chief. We find no cause for reversal in the trial court's permitting defense counsel to cross-examine defendant. While in this cross-examination, defendant expressed the positive opinion that plaintiff's inception of the medications (he had prescribed for him) did not cause his blindness, since we have determined that the portion of plaintiff's evidence, which he relies upon to show error in the trial court's ruling on defendant's demurrer, is insufficient for that purpose, it is our opinion that, if said court's ruling on defendant's cross-examination by his own counsel was error, it was a harmless one under the circumstances. We have often held that a trial court's ruling, if correct, will be affirmed regardless of his reasons therefor. See City of Tulsa v. Thomas, 89 Okl. 188, 214 P. 1070, and other cases cited in In Re Boyer, Okl., 490 P.2d 1076, 1079.

As plaintiff's arguments have shown no valid ground for reversing the judgment of the trial court, said judgment is hereby affirmed.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, JACKSON, IRWIN, HODGES and LAVENDER, JJ., concur.

McINERNEY, J., concurs in result.