Charlie **MARTIN**, Appellant,

v.

Dr. Harold **STRATTON**, an Individual, and Anesthesia Associates, Inc., an Oklahoma corporation, Appellees.

No. 45370.

Supreme Court of Oklahoma.

Oct. 23, 1973.

Floyd L. Walker and Larry S. Harral, Tulsa, for appellant.

Joseph M. Best, Joseph A. Sharp, Best, Sharp, Thomas & Glass, Tulsa, for appellees.

BERRY, Justice:

Plaintiff, Charlie Martin, instituted this action for personal injuries allegedly resulting from administration of an anesthetic by defendant, Dr. Harold Stratton, an employee and member of defendant, Anesthesia Associates, Inc., a professional corporation.

Plaintiff entered the hospital to have a tumor removed from his right hand. Dr. Stratton was engaged to administer the anesthetic and administered a brachial block anesthetic by injecting a hypodermic needle into the brachial plexus area of plaintiff's right shoulder. Another doctor performed the operation.

All testimony indicates plaintiff was not advised of possible complications inherent in administration of the anesthetic and plaintiff testified possible alternatives were not discussed with him.

Plaintiff testified he felt two sharp pains when the anesthetic was administered and then lost consciousness. He testified the pain was comparable to pain which might result from a severe blow to the crazy bone, but he had never felt a comparable pain. After the operation his shoulder was numb and after the numbness wore off he had a severe pain in his shoulder which lasted for about six weeks. At the time of trial, three years after the operation, he had not regained full use of his arm. The evidence established plaintiff suffered a partial loss of the axillary nerve supply to the deltoid muscle which controls lifting of the arm from the shoulder.

After both sides presented their evidence the trial court sustained defendants' renewed demurrer to plaintiff's evidence. Plaintiff appealed and the Court of Appeals, Division 1, reversed and remanded for new trial. We grant certiorari.

Neither a demurrer to the evidence nor motion for directed verdict should be sustained unless there is an entire absence of proof to show any right of recovery. Fletcher v. Meadow Gold Co., Okl., 472 P.2d 885. In passing on a demurrer to the evidence, or motion for directed verdict, the trial court must accept as true all evidence, and reasonable inferences therefrom, favorable to the party against whom the motion is directed, while disregarding conflicting evidence favorable to the movant. Steiger v. Commerce Acceptance of Okla. City, Inc., Okl., 455 P.2d 81.

There was no evidence defendant Stratton, in administering the anesthetic, failed to exercise the skill and learning ordinarily possessed by other anesthesiologists prac-

ticing in the general community. However, plaintiff contends the evidence required submission of the case to the jury under the "informed consent" doctrine and as a res ipsa loquitur case.

Informed consent identifies a principle that every person has a right to determine what shall be done with his own body and therefore, in situations where medical treatment involves grave risks of collateral injury even if performed in a non-negligent manner, the law imposes a duty upon physicians to inform the patient of options available and risks attendant upon each so the patient can make an informed exercise of choice. Cobbs v. Grant, 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1; Canterbury v. Spence, 464 F.2d 772; ZeBarth v. Swedish Hospital Medical Center, 81 Wash.2d 12, 499 P.2d 1. The duty extends to inherent and potential hazards of treatment, alternatives, and results likely if the patient remains untreated, Canterbury v. Spence, supra, but has no application to hazards of improper procedure. Mull v. Emory University, Inc., 114 Ga. App. 63, 150 S.E.2d 276. Disclosure of all risks is not required, and disclosures required will vary with the knowledge of the individual and the effect disclosures might have upon him. Nishi v. Hartwell, 52 Haw. 296, 473 P.2d 116.

The cases indicate to establish liability an unrevealed risk must materialize, causing injury to plaintiff, and there must be a causal connection between the failure to disclose and the injury. Canterbury v. Spence, supra. A causal connection exists when disclosure of significant risks incidental to treatment would have resulted in a decision against it. Canterbury v. Spence, supra.

There is confusion as to whether the proper theory is assault and battery or negligence for failure to disclose risks. Cobbs v. Grant, supra. See Sisler v. Jackson, Okl., 460 P.2d 903. In either event a question arises as to what evidence plaintiff must introduce in order to establish a prima facie case. The majority rule appears to be that a doctor has a duty to reveal only information which would be disclosed by a doctor of good standing within the medical community of which the doctor is a member, and plaintiff has the burden of establishing the standard and establishing defendant violated the standard. Govin v. Hunter, Wyo., 374 P.2d 421; Nishi v. Hartwell, supra; Doerr v. Movius, 154 Mont. 346, 463 P.2d 477.

Other cases indicate disclosure of all material risks is required, material risks being determined by the seriousness of the consequence, the probability of occurrence and the feasibility of alternatives, Getchell v. Mansfield, 260 Or. 174, 489 P.2d 953. The cited case holds plaintiff has the burden of establishing materiality, but once materiality is shown disclosure is required, subject to certain exceptions, regardless of the custom of physicians in the locality.

Other cases hold that if plaintiff establishes non-disclosure, injury and a causal connection, defendant has the burden of going forward with evidence pertaining to justification for failure to disclose risks. Cobbs v. Grant, supra. Some cases indicate a showing that non-disclosure of certain facts complies with the community standard is a valid defense, Stauffer v. Karabin, 30 Colo.App. 357, 492 P.2d 862, while others indicate that where, as here, the physician makes no disclosures, he has the burden of establishing that failure to disclose under the circumstances conformed with accepted professional standards, Collins v. Meeker, 198 Kan. 390, 424 P.2d 488.

We conclude that if the theory of liability referred to as "informed consent" is ever adopted by this Court the plaintiff will have the burden to either introduce evidence from which the jury could reasonably infer that the defendant failed to disclose to plaintiff what a reasonably prudent physician in the medical community in the exercise of reasonable care would have disclosed to his patient, or evidence from which the jury could reasonably infer that material risks were inherent in the pro-

posed medical procedure in terms of seriousness, probability of occurrence and feasibility of alternatives, and defendant failed to disclose these risks to plaintiff.

 We need not choose between these two rules because plaintiff's evidence was insufficient under both theories.

Here there was no evidence anesthesiologists within the community involved, or nationally, disclose risks of anesthetics to patients.

Further, there was no evidence from which the jury could have reasonably inferred that material risks, in terms of probability and seriousness of consequence, were inherent in administration of the anesthetic.

Dr. Stratton's testimony would support an inference that risk of injury of the type suffered by plaintiff was an inherent risk of a brachial block anesthetic and plaintiff's injury was certainly serious. However, there was no evidence tending to establish that the probability of an injury such as plaintiff's injury resulting from administration of a brachial block was of such magnitude that a patient deciding whether to submit to administration of a brachial block should be warned of the possibility. The doctor who performed the operation testified he had performed numerous operations where a brachial block had been administered and a result comparable to the result in this case had never occurred.

Dr. W, the president of Anesthesia Associates, Inc., testified that he had been an anesthesiologist for 17 years and was not aware of a similar injury resulting from the anesthetic, even though he was aware of similar injuries resulting from positioning of the arm after the brachial block was administered.

Dr. Stratton testified he had been an anesthesiologist for 9 years, had performed at least 250 brachial blocks in the same manner and had never seen a nerve injury from a brachial block.

Dr. N, an anesthesiologist, a witness for defendants, testified he had never heard of any injury being caused by administration of a brachial block and injury to the axillary nerve from a brachial block rarely occurs.

The medical testimony would support an inference that other risks were inherent in the administration of a brachial block but there was no testimony concerning the seriousness of these risks, or the probability of these risks materializing. Therefore, we conclude plaintiff's evidence was not sufficient to allow the jury to infer that defendants breached a duty to disclose material risks inherent in the administration of the anesthetic.

 As concerns res ipsa loquitur, one of the foundation facts to be established by the evidence to bring a case within this doctrine's application is "what thing" caused the injury. Holland v. Stacy, Okl., 496 P.2d 1180.

 Further, the doctrine in only applicable when the character of the accident and circumstances attending it lead reasonably to the belief that in the absence of negligence it would not have occurred. St. John's Hospital & School of Nursing v. Chapman, Okl., 434 P.2d 160.

As concerns the cause of plaintiff's injury, Dr. W testified the injury could have been caused by positioning of the arm during the operation, or subsequent thereto, or allowing the arm to fall while plaintiff was in the recovery room or being transported back to his room. He testified he was aware of similar injuries resulting from positioning of the arm, but had no personal knowledge of similar injuries caused by administration of a brachial block, and that the anesthesiologist is not responsible for positioning of the arm during surgery or care in the recovery room. Dr. Stratton testified the injury could have been caused by positioning of the arm during surgery or in the recovery room, by the tourniquet used during the operation, or by handling

of the arm when plaintiff received x-rays four hours after the operation.

Dr. N testified the injury could have been caused by anatomic variation, pre-existing disease, or positioning of the arm. He testified positioning of the arm is the most common cause of injury and positioning of the arm during surgery is not a part of the anesthesiologist's responsibility. He testified the most common nerve which would be affected by positioning of the arm would be the ulnar nerve.

All three of these witnesses testified that a properly administered brachial block causes a tingling feeling along the nerve down the arm, similar to an electric shock. Dr. Stratton described it as being similar to hitting the crazy bone, only not as severe.

Dr. N testified that the pain from administration of a brachial block would not render one unconscious unless the person was particularly prone to faint, he knew of no occasion where a patient lost consciousness as a result of pain caused by a brachial block, but it is possible for extreme pain to cause people to lose consciousness.

Dr. Stratton testified the pre-surgery medication given to plaintiff could have caused plaintiff not to remember what happened in the operating room.

■ Causal connection may be proved by circumstantial evidence, but the evidence must have sufficient probative force to constitute the basis for a legal inference, rather than mere speculation, and the circumstances proved must lead to the conclusion with reasonable certainty and probability. Downs v. Longfellow Corporation, Okl., 351 P.2d 999. In that case we stated:

"\* \* \* we are of the opinion that the evidence adduced by plaintiffs is insufficient to support an inference that the fire was probably caused by a thing which was under the exclusive management and control of defendant. The doctrine of res ipsa loquitur, is therefore, not applicable."

■ In situations where evidence indicates there are several possible causes of an injury and no layman could know or have any reasonable basis for an inference regarding cause, testimony by a physician that a specific occurrence might, could, or would produce a certain result is no more than an assurance that such result was scientifically possible and does not alone constitute substantial evidence that such occurrence or condition did cause the result where the evidence does not exclude all other causes. Cohenour v. Smart, 205 Okl. 668, 240 P.2d 91. In certain instances lay testimony can exclude other causes. Delk v. Gill, Okl., 462 P.2d 530.

■ Furthermore, evidence of instantaneous onset of injury following a certain occurrence and expert testimony that the injury could have been caused by the occurrence is sufficient to submit the question of causation to the jury even though there is evidence of other possible causes. Orthopedic Clinic v. Hanson, Okl., 415 P. 2d 991.

■ Here there was evidence the injection could have caused the injury. However, between the time of the injection and the time plaintiff became aware of the injury there were other occurrences which could have caused the injury and the only evidence plaintiff introduced tending to exclude other causes was testimony by the operating surgeon to the effect the operation could not have caused the injury because the operation was on the lower part of the arm, not on the shoulder. No evidence was introduced to exclude the possibility the injury might have been caused by positioning of the arm during the operation and subsequent thereto. Therefore, we conclude plaintiff did not introduce sufficient evidence to support an inference that plaintiff's injury was "probably" caused by a thing which was under the exclusive management and control of defendant and the doctrine of res ipsa loquitur is therefore not applicable. Downs v. Longfellow Corporation, supra.

■ As concerns whether the injury was more likely the result of negligence than some other cause, we conclude laymen were not qualified to determine that a brachial block would not ordinarily cause the injuries suffered by plaintiff unless unskillfully done. Bialer v. St. Mary's Hospital, 83 Nev. 241, 427 P.2d 957; Buchanan v. Downing, 74 N.M. 423, 394 P.2d 269.

Furthermore, there was no medical testimony to support a finding that injuries such as plaintiff's resulting from administration of a brachial block are more likely the result of negligence than some other cause.

Dr. W testified that it was not common for this type of injury to result from proper administration of a brachial block. Dr. N testified that in the absence of something unusual it would not be common for injury to result from administration of a brachial block. In response to the question as to whether injury would likely result in the absence of negligence he stated that injury rarely occurs period.

This testimony would support an inference that injury seldom results from administration of brachial block in the absence of something unusual, but would not support an inference that when injuries such as plaintiff's result from administration of a brachial block the injury is more likely the result of negligence than any other cause. Therefore, we conclude the trial court did not err in refusing to submit the case to the jury under the theory of res ipsa loquitur.

The judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, LAVENDER and DOOLIN, JJ., concur.

HODGES, BARNES and SIMMS, JJ., concur in part; dissent in part.

SIMMS, Justice (concurring in part and dissenting in part):

' While I concur with the majority opinion in it's analysis and application of the law of "informed consent," I must respectfully dissent to the majority view that the doctrine of res ipsa loquitur is not relevant to the facts of this case.

In St. John's Hospital and School of Nursing v. Chapman, Okl., 434 P.2d 160 (1967) this Court approved the use of the doctrine of res ipsa loquitur in medical malpractice cases, where the circumstances warrant its application, when we held in the following syllabi:

"3. Actions involving malpractice or hospitals may not, in a proper case, escape the doctrine of res ipsa loquitur."

"6. Ordinarily, the weight of the rebuttal evidence offered by the defendant, to overcome the inference of negligence on the part of the defendant, which arises under the doctrine of res ipsa loquitur, as well as the weight of the inference, is for the jury. Unless all reasonable minds are bound to reach the same conclusion, it is the jury, in a jury trial, that is to determine whether or not the explanation offered by the defendant is 'satisfactory' enough to overcome the inference of negligence, even though the defendant's evidence be undisputed."

In the body of *Chapman* we find the following language:

". . . under the doctrine of res ipsa loquitur the inference of negligence on the part of the defendant is allowed only where, in the circumstances presented by the plaintiff, the trier of the facts could logically infer that the defendant had failed to exercise ordinary care in the circumstances or, in the ordinary course of things, the injury or damage would not have occurred; . . ."

Fundamentally, the three conditions necessary to application of res ipsa loquitur in

the trial of a case are concisely stated to be that the event involved:

1. Must be of a kind which ordinarily does not occur in the absence of someone's negligence;

2. Must be caused by an instrumentality or agency within the exclusive control of the defendant;

3. Must not have been due to any voluntary action or contribution on the part of the plaintiff. Prosser, Torts, 199 (2nd Ed. 1955)

Appellant's evidence in the trial court, which must be accepted as true for the purposes of a motion for directed verdict and renewed demurrer, tended to establish that:

"1. Plaintiff was in general good health when he entered the hospital.

2. Plaintiff was sedated when wheeled into the operating room.

3. Defendant anesthesiologist injected the anesthetic in administering the brachial plexus block anesthetic.

4. Defendant, Harold Stratton, intended the needle to reach the nerve area but did not intend to damage or traumatize the nerve. He intended to bathe the nerve in the solution.

5. At the time of the injection in the brachial plexus, plaintiff felt a sharp pain, followed by another sharp pain, which caused him to pass out.

6. Evidence that injury to the nerve can be caused by the needle during injections.

7. It is not necessary or proper to inject or traumatize the nerve in administering the anesthetic.

8. Injury does not normally result from a proper administration of the anesthetic.

9. The growing weakness in plaintiff's arm was due to injury to the axillary nerves in the area of the brachial plexus, the same area injected by the defendant."

This evidence, all admittedly favorable to plaintiff, is such that the jury could in-

fer that the injury to plaintiff resulted from the injury to the nerve from the administration of the anesthetic; that such injury does not occur and is not common in the absence of negligence; that the alleged instrumentality causing the injury was in the sole control of defendants; and, that the injury was not due to any voluntary act on plaintiffs part.

Brief of both appellant and appellee direct our attention to the California case of Bardessono v. Michels, 3 Cal.3d 780, 91 Cal.Rptr. 760, 478 P.2d 480 (1970). *Bardessono* involved a series of injections of cortisone and xylocaine deep into the sore area of the right shoulder, and more particularly, to the brachial plexus, with resultant paralysis.

The Supreme Court of California approved the giving of a res ipsa loquitur instruction, stating:

"The record in this case contains substantial evidence that plaintiff's tendonitis condition was not common place; that injections of cortisone and a local anesthetic (xylocaine) were the normal, common treatment for this condition, and that untoward results were extremely rare."

"This case, therefore, involves a relatively simple, rather than complex, procedure in which the physician injected a fluid into the body. The jury could accordingly rely upon its common knowledge in determining whether the accident was of a kind that would ordinarily not have occurred in the absence of someone's negligence. Thus, the trial court properly instructed the jury that if it found from expert testimony, common knowledge, and all the circumstances that the injury was more probable than not the result of negligence, it could infer negligence from the happening of the accident alone."

Appellee argues that *Bardessono* is not herein controlling because *Bardessono* holds for the proposition that res ipsa loquitur may only be applied where the surgical treatment is so common, simple, and

well known that it is within the knowledge of the ordinary layman. Further, that if the medical procedure is so unusual and complex as to require the testimony of an expert, res ipsa loquitur is not applicable.

I do not so construe *Bardessono*.

The following language is found in *Bardessono*, 91 Cal.Rptr. at page 761, 478 P.2d at page 481:

"The trial court properly followed the doctrine of res ipsa loquitur in instructing the jury that it could infer negligence from the happening of the accident alone, *if it found from the testimony of physicians called as expert witnesses,* common knowledge, and all the circumstances, that the injury was more probably than not the result of negligence." (E.A.)

Also, 91 Cal.Rptr. at page 768, 478 P.2d at page 488:

"Thus, the trial court properly instructed the jury that if it found from *expert testimony,* common knowledge, and all the circumstances that the injury was more probably than not the result of negligence, it could infer negligence from the happening of the accident alone."

In *Bardessono,* the Supreme Court of California cites with approval, LaMere v. Goren, 233 Cal.App.2d 799, 801–802, 43 Cal.Rptr. 898 (1965); which case also involved an injection into the area of the brachial plexus.

In *LaMere, supra,* the trial court refused to give an instruction on res ipsa loquitur and the court of appeals reversed, holding that a res ipsa loquitur instruction based on expert testimony should have been given. In dictum, however, the court rejected a res ipsa instruction based upon common knowledge, for the reason that with respect to this particular type injection, "common knowledge of layman is not a reliable foundation."

We believe the better rule to be, in determining whether the occurrence of an injury is of such a nature that it probably was the result of the negligence of some-

one under the res ipsa loquitur doctrine, the trier of fact may rely on both medical testimony and common knowledge. See, Clark v. Gibbons, 66 Cal.2d 399, 408, 58 Cal.Rptr. 125, 426 P.2d 525.

The same doctrine was adopted by this Court in Delk v. Gill, Okl., 462 P.2d 530 (1969) wherein was held:

"Plaintiff contends, in substance, that whether or not the evidence was sufficient to go to the jury on the question of whether or not defendant's acts caused her condition, does not depend entirely upon the testimony of Dr. S, or any other expert witness, but that, under Oklahoma Natural Gas Co. v. Kelly, 194 Okl. 646, 153 P.2d 1010, proof of proximate cause 'need not rest entirely' upon expert testimony, 'but may rest in part upon non-expert testimony.'"

It therefore follows that plaintiff, on retrial, assuming the evidence to be the same, should be permitted to go to the jury on the theory of res ipsa loquitur, under proper instructions.

I am authorized to state that Justice Hodges and Justice Barnes join in this opinion concurring in part and dissenting in part.